NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**BRANDON D. DATILMA,**

        **Plaintiff,**

-vs-                                                **Case No. 6:10-CV-625-ORL-18KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Brandon D. Datilma, seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 9, 11.

**I.    PROCEDURAL HISTORY.**

The SSA found that Datilma was disabled as a child because he met the Listing for attention deficit hyperactivity disorder (ADHD).[1] R. 20; *see also* R. 372. When he

---

[1] The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

NOT FOR PUBLICATION

turned 18, his condition was reevaluated under the legal standard applied to new applications made by adults for Supplemental Security Income for the Aged, Blind and Disabled Program (SSI), 42 U.S.C. § 1381, *et seq.* (sometimes referred to herein as the Act). R. 17; *see also* 20 C.F.R. 416.987(a).

A disability hearing officer determined that Datilma was not disabled as of November 2007. R. 43-49. Datilma sought review of that decision by an administrative law judge (ALJ). R. 39.

An ALJ held a hearing on October 8, 2008. Datilma, represented by a non-attorney representative, and Datilma's mother testified at the hearing. Walter Todorowski, a vocational expert (VE), also testified. R. 712-69.

After considering the testimony and the medical evidence presented, the ALJ determined that Datilma had no past relevant work. R. 22. The ALJ concluded that the medical evidence showed that Datilma had ADHD, which was a severe impairment, but that this impairment did not meet or equal any of the Listings. R. 19.

The ALJ found that Datilma had the residual functional capacity (RFC) to perform a full range of work at all exertional levels with a nonexertional limitation to performing only simple and repetitive tasks on a sustained basis. *Id.* In reaching this conclusion, the ALJ found that if Datilma took his medications he would have only mild to moderate restrictions of activities of daily living and social functioning and that his concentration, persistence and pace would be moderately affected due to ADHD. R. 22. The ALJ also found Datilma's testimony about the limitations arising from his impairments was not

totally credible. *Id.*

Although a VE testified, the ALJ did not mention the VE's opinion in the decision. Rather, the ALJ relied on the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt P, App. 2, as a framework to reach the conclusion that Datilma could make "a successful adjustment to other work that exists in significant numbers in the national economy." R. 23. Therefore, the ALJ concluded that Datilma was not disabled. *Id.*

Datilma requested review of the ALJ's decision, and submitted additional treatment records. R. 10, 13. On February 16, 2010, the Appeals Council issued a decision finding that the newly submitted evidence did not provide a basis for changing the ALJ's decision. R. 7-9. Datilma sought review of this decision by this Court. Doc. No. 1.

## II.    JURISDICTION.

Plaintiff having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.    STANDARD OF REVIEW.

To be entitled to disability benefits under SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is one "that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

>  (1) Is the claimant presently unemployed?
>
>  (2) Is the claimant's impairment severe?
>
>  (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
>  (4) Is the claimant unable to perform his or her former occupation?
>
>  (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 416.920(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id.* at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228

NOT FOR PUBLICATION

(11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983)). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id.*

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA

NOT FOR PUBLICATION

properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## IV. STATEMENT OF FACTS.

After a thorough review of the record, I find that the pertinent facts are generally adequately presented in the ALJ's decision and the parties' memoranda. Therefore, I will only summarize the evidence to protect Datilma's privacy to the extent possible.

Datilma was born in 1988. R. 717. He lived with his mother and younger brother. R. 718. Datilma had a history of violence as a child. R. 721, 736, 741. He finished high school in regular classes with exceptional education support for personal social skills. R. 370, 635. He attended Edward Waters college for about three weeks, R. 732, 743-44. Emma Swanson, Datilma's mother, testified that personnel at the college told her that Datilma could not get up in time to come to class, and he did not follow through with the classes. R. 743.

In 2006, Datilma worked part-time at fast-food restaurants for a short time. His jobs included preparing orders, washing dishes and cleaning areas of the restaurant. He was fired because he was not consistent and kept coming to work late. R. 718-20; *see also* R. 635. Swanson testified that Datilma's work supervisors told her that Datilma did not follow instructions and complete assigned tasks, and that he became upset in response to directions to complete his work. R. 742-43.

NOT FOR PUBLICATION

Treatment records reflect that, in 1999, Datilma was diagnosed with Oppositional-Defiant Disorder (ODD). R. 518. In 2004, Datilma was again diagnosed with ODD and ADHD. R. 565.

Rosimeri Clements, Psy.D., examined Datilma in October 2007 at the request of the SSA. Datilma was on medication during this evaluation. R. 636. Dr. Clements noted that Datilma slept through most of the interview and became irritable when asked questions. He completed the tests Dr. Clements administered but he showed little motivation and exerted minimal effort. R. 636-37. The Weschler Adult Intelligence Scale – Third Edition showed a full-scale IQ of 50, in the extremely low category. R. 637. Dr. Clements that the test result would support a diagnosis of mental retardation, but considering Datilma's lack of motivation during testing, behavioral issues and his school records, the diagnosis was borderline intellectual functioning. R. 638. Dr. Clements also diagnosed ODD, ADHD and major depressive disorder, recurrent, moderate. Dr. Clements recommended referral to Vocational Rehabilitation. *Id.* There is no evidence in the record that such a referral was made.

Physicians who reviewed Datilma's records at the request of the SSA and rendered mental functional capacity evaluations opined that Datilma would have moderate limitations in activities of daily living, social functioning and concentration, persistence and pace. R. 650, 669. They opined that Datilma would not be significantly limited in the ability to understand, remember and carry our very short and simple instructions, sustain an ordinary routine without special supervision, and work in coordination with others. R. 654, 673. One of the reviewing physicians opined that

NOT FOR PUBLICATION

Datilma would be moderately limited in accepting instructions and responding appropriately to criticism from supervisors, and both reviewing physicians agreed that Datilma would be moderately limited in getting along with coworkers. R. 655, 674. Theodore Weber, Psy.D., a reviewing physician, opined that Datilma had "the ability to at least perform simple work and appears to respond when taking medication." R. 656. Deborah Carter, Ph.D., also a reviewing physician, noted that Datilma was able to "cope with routine activities but has limited tolerance for stress and change." R. 675.

Records of treatment of Datilma at Lakeside Alternatives in 2008 reflect, for the first time, reports of visual and auditory hallucinations. R. 689. Syed Abbas, M.D., observed that Datilma's affect was restricted. His diagnoses were ODD and Antisocial Personality Disorder. R. 694. He prescribed Abilify and Wellbutrin. R. 695.

At the ALJ's hearing, Datilma testified that he heard voices and had visual hallucinations, and he became depressed "by the most . . . stupid stuff." R. 722. When he took his medication, he felt better. R. 725. He was not taking his medication because he could not afford to pay for it. R. 721, 727. [2] He was certain, however, that if he could afford his currently prescribed medication he could work or go to school without getting upset with people. R. 767. His goal was to become a football defensive lineman. R. 728.

During a typical day, he would stay home and watch television. Friends came to visit sometimes and they played video games. R. 723, 729. He also saw his father three times a week. R. 731. Datilma knew how to use a computer, and he had a social

---

[2] Swanson testified that she is a nurse who works and earns $18.53 per hour. R. 752. She indicated that Datilma could no longer be covered by her insurance after he reached age 19 unless he were found to be disabled. R. 759.

networking page. He did not have a computer at his home, but he sometimes used a computer at his aunt's house. R. 730.

His mother took care of household chores. R. 723. Swanson tried to get Datilma to assist with the chores, but he would argue with her about doing the assigned tasks. R. 744. He was able to care for his personal hygiene, although his mother often laid out his clothes for him. R. 724, 740. He had a driver's license but he did not drive. R. 725. Swanson noted that Datilma would not read, fell asleep easily, and often stayed in his room. R. 744-45.

Swanson also testified that she had to give Datilma step-by-step instructions to get him to perform a task such as cleaning his room. R. 738. She had to remind him to bathe and change his clothes. She often heard him talking to himself. Anything could make him frustrated and "explosive," and he would yell and scream. R. 739, 740-41. He cursed at the disability hearing officer to such an extent that the hearing was terminated. R. 45, 749-50.

The ALJ questioned the VE about Datilma's previous work. The VE testified that Datilma's work at the fast-food restaurants was unskilled work requiring a medium level of exertion. R. 762. The ALJ asked the VE to assume the following hypothetical claimant:

> An individual that has the same age, . . . education and work experience as the claimant. This individual has a history of ADHD and has been described as having oppositional defiant disorder and behavioral problems which are . . . characterized by moodiness, talking to himself and auditory hallucinations. This individual further has been upset, easily angered and suffers from depression and isolates himself.

NOT FOR PUBLICATION

R. 763. The VE testified that this hypothetical claimant could not perform Datilma's previous work in fast-food restaurants because he could have to handle criticism and stress. Also, "periods of decompensation . . . when he strikes out because of anger . . . are all . . . contraindicated to employment." R. 763-64. These issues would, in the VE's view, also preclude working at any other jobs. R. 764.

**V.    ANALYSIS.**

Datilma asserts several grounds supporting reversal. He contends that the ALJ did not consider all of the evidence in the record in rendering the RFC determination. He asserts that the ALJ erred by failing to credit the VE's testimony that he could not perform any work available in the national economy. Finally, he argues that the ALJ's finding that his testimony was not credible was erroneous.

As to the first assignment of error, Datilma argues that the ALJ failed to state the weight given to the opinion of Dr. Clements. This argument is well taken. While the ALJ recited Dr. Clements' findings, she did not state the weight she gave to those opinions or explain the extent to which she considered the diagnoses of ODD and borderline intellectual functioning in rendering her RFC determination. The United States Court of Appeals for the Eleventh Circuit has recently held that when, as here, an ALJ does not state the weight given to the medical opinions in the record, "'it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel v. Comm'r of Soc. Security*, 631 F.3d 1176, 1179 (11th Cir. 2011)(quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Because the ALJ did not state the weight she gave to Dr. Clements' opinion, reversal is required.

Reversal is also required based on the ALJ's credibility determination to the extent that she relied on Datilma's failure to take his prescribed medication. The record is replete with evidence that he did not take that medication because he could not afford it. The Eleventh Circuit has held that "poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). Moreover, Datilma was taking his medication when he was examined by Dr. Clements. Despite being medicated, he was uncooperative, irritable when questioned, impulsive, gave minimal effort and made careless mistakes. R. 636-37. Thus, the failure to state the weight given to Dr. Clements' findings also undermines the ALJ's credibility determination.

Datilma argues that because the VE testified that there are no jobs he can perform, the Court should direct the Commissioner to award him disability benefits. A court may order an award of benefits "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). In this case, however, the ALJ did not pose a hypothetical question to the VE that corresponded with the ultimate RFC assessment. Therefore, it is not clear that the cumulative effect of the evidence establishes disability without any doubt. Accordingly, remand for further proceedings is appropriate.

On remand, the Commissioner should again call upon the services of a VE to determine whether there is work available in the national economy that Datilma can perform despite his nonexertional impairments. While the Grids may provide a framework for making that analysis, the Eleventh Circuit requires that an ALJ's decision

NOT FOR PUBLICATION

that nonexertional impairments do not significantly limit basic work skills (that is, do not preclude a wide range of work at a given exertional level) be supported by substantial evidence in the record.  *See, e.g., Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (per curiam) ("Absent testimony from a vocational expert, the ALJ's conclusion that appellant's mental limitations do not significantly compromise her basic work skills or are not severe enough to preclude her from performing a wide range of light work is not supported by substantial evidence.").

## VI. RECOMMENDATION.

For the reasons set forth herein, it is **RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings.  The Court should also direct the Clerk of Court to issue a judgment consistent with the Court's Order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 1st day of August, 2011.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE