# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRANDON D. DATILMA,**

**Plaintiff,**

-vs-                                                          **Case No.  6:10-cv-625-Orl-18KRS**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

---

## ORDER

THIS CAUSE comes for consideration on Brandon D. Datilma's appeal from a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Datilma's claim for Social Security disability benefits. (Doc. 1, filed Apr. 22, 2010.) The Commissioner responded in opposition and filed a certified copy of the record before the Social Security Administration. (Doc. 9, filed Oct. 4, 2010; Doc. 11, filed Oct. 6, 2010.) An Administrative Law Judge ("ALJ") determined that Datilma was not disabled after November 1, 2007 for purposes of the Social Security Act (the "Act") and, therefore, should not receive disability benefits. (Doc. 11 at 17, 24.) For the following reasons, this Court affirms the Commissioner's decision to deny benefits.

### I. BACKGROUND

The Social Security Administration ("SSA") determined that Datilma was disabled as a child because he met the listing for attention deficit hyperactivity disorder ("ADHD") contained in 20

C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). (R. 19.) When Datilma reached age eighteen, the SSA reevaluated his condition under the standard applied to new applications made by adults for Supplemental Security Income for the Aged, Blind, and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq*. (R. 17.) A disability hearing officer determined that Datilma was, as of November 1, 2007, not disabled. (R. 43, 49.)

Datilma sought review of the SSA's decision by an ALJ, and a hearing was held on October 8, 2008. (R. 17, 39.) The ALJ concluded that Datilma could make a "successful adjustment to other work that exists in significant numbers in the national economy." (R. 23.) Based on this conclusion, the ALJ decided that Datilma was not disabled. (Id.) Datilma requested review of the ALJ's decision and submitted additional treatment records. (R. 10, 13.) On February 16, 2010, the Appeals Council decided that the new evidence did not provide a basis for changing the ALJ's decision. (R. 7-9.) Datilma now appeals to this Court.[1]

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); see also 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir.1983) (citing, *inter alia*, Richardson v. Perales, 402 U.S.

---

[1] Because Datilma has exhausted his administrative remedies, this Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

389, 401 (1971)). A court reviewing the Commissioner's decision "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Id. "If the Commissioner's decision is supported by substantial evidence, [a reviewing court] must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

III. DISCUSSION

To be entitled to SSI benefits, a claimant must be unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. See 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 1382c(a)(3)(D).

The Social Security regulations set forth a "five-step sequential evaluation process" for an ALJ to follow in determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). The ALJ must determine whether: (1) the claimant is performing substantial gainful activity; (2) the claimant suffers from a severe impairment or a combination of impairments that is severe; (3) the claimant's impairments meet or equal an impairment specifically listed in Appendix 1; (4) the claimant can perform his past relevant work; and (5) based on the claimant's age, education, and work experience, he could perform other work of the sort found in the national economy. Id. § 404.1520(a)(4)(i-v). If a claimant's impairment does not meet or equal an impairment specifically listed in Appendix 1,

his residual functional capacity ("RFC") is assessed and used at steps four and five.  Id. § 404.1520(e).

In the fifth step, the ALJ may make his determination as to whether the claimant can perform other work based on the testimony of a vocational expert or by using the Medical Vocational Guidelines which are often referred to as the "Grids." Phillips, 357 F.3d at 1239; 20 C.F.R. pt. 404, subpt. P, app. 2. If the claimant can make an adjustment to other work, the ALJ will find that he is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). However, if the claimant cannot make an adjustment to other work, the ALJ will find that he is disabled. Id. In sum, disability can be found at either step three (without proceeding to steps four and five) or at step five.

In this case, the ALJ followed the evaluation process properly. First, there was no dispute that Datilma was not performing substantial gainful activity. At step two, the ALJ found that Datilma's ADHD was a severe impairment.[2] (R. 19.) However, at step three, the ALJ found that Datilma's impairments did not meet or equal any of the impairments specifically listed in Appendix 1. (R. 19, 22.) At step four, the ALJ found that Datilma's very brief work history, consisting of jobs at fast food restaurants, was not "past relevant work." (R. 21-22.) At step five, the ALJ found that Datilma had the residual functional capacity to perform a full range of work at all exertional levels with a nonexertional limitation to performing only simple and repetitive tasks on a sustained basis. (R. 19.) The ALJ further found that, given Datilma's age, education, work experience, and residual

---

[2] The ALJ found that oppositional defiant disorder, major depressive disorder, borderline intellectual functioning, and antisocial personality disorder were not severe impairments. Datilma takes issue with the ALJ's not finding these conditions severe; however, there can be no error at step two of the analysis if the ALJ finds at least one severe impairment. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (describing that step two "acts as a filter" for claimants who suffer no severe impairment, whereas the condition, as a whole, of claimants with at least one severe impairment is considered at step three). Because the ALJ found Datilma's ADHD a severe impairment, there was no error at step two.

functional capacity, he could perform a significant number of jobs in the national economy. (R. 23.) She reached this conclusion using the Grids, although a vocational expert testified at the hearing. (Id.)

Each of the ALJ's findings is supported by substantial evidence. First, the ALJ's finding that Datilma's ADHD was a severe impairment and Datilma's oppositional defiant disorder, major depressive disorder, borderline intellectual functioning, and antisocial personality disorder were not severe impairments is supported by substantial evidence. Datilma did not show that any of these impairments, other than ADHD, lasted or were expected to last continuously for twelve months as is required to find a "severe impairment." See 42 U.S.C. § 1382c(a)(3)(A). Also, the ALJ relied on the opinion of Dr. Carter who, in evaluating Datilma's RFC, found that he socializes, "retains capacity to function mentally and socially . . . and to interact appropriately with others[,]" is "able to cope with routine activities[,]" and "appears capable of most routine tasks when he chooses to do so." (R. 675.) Accordingly, the ALJ's first finding is supported by substantial evidence.

Next, the ALJ's finding that Datilma's impairments did not meet or equal any of the specifically listed impairments is supported by substantial evidence. This finding is supported by Dr. Carter's findings discussed above regarding Datilma's RFC. Also, Dr. Carter generally concluded that Datilma was not more than moderately limited in any functional limitation category, including maintaining social functioning and concentration, persistence, or pace. (R. 669.) Further, she concluded that Datilma was "not significantly limited" in many functional limitation categories. (Id.) Dr. Weber also concluded that Datilma was not more than moderately limited in any functional limitation category. (R. 650.) Finally, Datilma admitted in his own testimony that he is only

"somewhat" disabled. (R. 765.) Accordingly, the ALJ's second finding is supported by substantial evidence.

Finally, the ALJ's finding that Datilma could perform a significant number of jobs in the national economy given his age, education, work experience, and residual functional capacity is supported by substantial evidence. Dr. Carter's conclusions, which are discussed above, provide support for this finding. Additionally, Datilma acknowledged in his own testimony that he can handle work and school competently if he takes his prescribed medication. (R. 767.) Dr. Weber confirmed Datilma's testimony, stating "[Datilma's] medication does manage his behavior." (R. 652.)

Other physicians who treated Datilma also provide support for the ALJ's finding at step five. In 2007, Dr. Clements reported that Datilma showed no symptoms of psychosis, such as hallucinations, delusions, or ideas of reference; no suicidal or homicidal tendencies; logical and coherent thought process without articulation problems; and a "full range of appropriate affects and appeared in no acute mental distress." (R. 637.) In September and November 2008, Dr. Abbas reported that Datilma's memory and concentration were fair, his mood and thought processes were congruent, he was well groomed, he had no hallucinations or evidence of homicidal or suicidal ideation, he was cooperative, he was alert, and his insight was fair. (R. 709.)

In making her determination that Datilma could perform a significant number of jobs in the national economy, the ALJ found that Datilma suffers from no exertional impairment. (R. 19.) Indeed, the record is devoid of any suggestion that Datilma suffers from any exertional impairment. Based on the ALJ's findings regarding Datilma's exertional and non-exertional impairments, the

ALJ was correct to apply section 204.00[3] of the Grids and find that Datilma could perform a significant number of jobs in the national economy. Thus, the ALJ's finding at step five is supported by substantial evidence.

Datilma argues the ALJ erred in step five by failing to adequately consider the vocational expert's opinion in deciding whether Datilma could perform a significant number of jobs in the national economy. The ALJ may make his determination as to whether the claimant can perform other work based on the testimony of a vocational expert or by using the "Grids." Phillips, 357 F.3d at 1239. While exclusive reliance on the Grids is not appropriate when a claimant has non-exertional impairments that significantly limit his basic work skills, id. at 1242 (citing Francis v. Heckler, 749 F.2d 1562, 1566 (11th Cir. 1985)), the ALJ did not find that Datilma had a non-exertional impairment that significantly limits his basic work skills. Therefore, the ALJ's reliance on the Grids was proper in this case.

Datilma also contends that the ALJ's decision is undermined by the fact that he is unable to afford his prescribed medications. In support, he cites Dawkins v. Bowen, 848 F.2d 1211 (11th Cir. 1988). In Dawkins, the Eleventh Circuit held that "poverty excuses noncompliance" with prescribed medical treatment. Id. at 1213. However, the holding in Dawkins relates to 20 C.F.R. § 416.930(b), which provides that a claimant's failure to follow prescribed treatment without good cause will preclude a finding that he or she is disabled. See id. Here, although the ALJ mentions § 416.930

---

[3] Section 204.00 provides: "The residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels." 20 C.F.R. Pt. 404, subpt. P, app. 2 § 204.00. This section further explains that "an impairment which does not preclude heavy work (or very heavy work) . . . generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." Id.

in her decision, she did not base her conclusion that Datilma was not disabled on § 416.930(b). (R. 22.) Therefore, <u>Dawkins</u> is inapplicable to this case.[4] <u>See Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003) (declining to apply <u>Dawkins</u> because the ALJ's determination that the claimant was not disabled was "not significantly based on a finding of noncompliance.").

Datilma also contends that the ALJ erred in determining that Datilma's subjective complaints regarding his alleged disability were not credible. When a claimant attempts to establish disability through his own testimony of subjective symptoms, he must show "evidence of an underlying medical condition and either [(1)] objective medical evidence that confirms the severity of the alleged pain arising from that condition or [(2)] that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991). If an ALJ decides not to credit a claimant's testimony of subjective symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." <u>Id.</u> "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (citing <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1054 (11th Cir.1986)).

In this case, the ALJ decided not to credit Datilma's subjective complaints and properly articulated support for that decision. First, it is difficult to construe Datilma's complaints as establishing a genuine disability when he characterized his own condition as only "somewhat"

---

[4] In any event, Datilma's claim that he is not taking his prescribed medications because he is unable to afford them is undercut by his apparent ability to afford unnecessary items on a regular basis (R. 733-34), the report of Dr. Clements stating that Datilma has an inadequate ability to handle his own finances (R. 637), and his prior active refusal to take his medications when they were available to him. (R. 747-48.) Further, there is no testimony on the record that Datilma sought but failed to obtain low-cost or no-cost prescription coverage. Ultimately, Datilma's argument that his purported inability to afford his medication somehow undermines the ALJ's decision is of no effect.

disabled. (R. 765.) Next, Dr. Carter and Dr. Clements' opinions that Datilma had no more than moderate limitations cast doubt on Datilma's subjective complaints. Additionally, the ALJ found support for her decision to discredit Datilma's subjective complaints in the fact that Datilma's alleged symptoms suddenly appeared or severely worsened once he was notified that he would no longer receive benefits.   (R. 22.)   Finally, the ALJ decided to discredit Datilma's subjective complaints because the evidence that Datilma is able to interact normally with his brother, father, and friends and is able to focus television and computer belied his subjective complaints.   (Id.) Accordingly, the ALJ's decision not to credit Datilma's subjective complaints is supported by substantial evidence.

## IV.  CONCLUSION

Each of the ALJ's findings is supported by substantial evidence.  Accordingly, the final decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment accordingly and **CLOSE** the case.

It is **SO ORDERED** in Orlando, Florida, this _____ day of September, 2011.

**G. KENDALL SHARP**
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
United States Magistrate Judge